Minors, and that is 5, consolidated, 5-19-4-1, and when you are ready you may begin. Good afternoon. I'm Paula Newcomb. I'm attorney for the appellant Katie Woodring, who is the mother of Carson Filkins, Draven v. Shuren, & Drak, and also called Drake v. Shuren, & Clegans. There's also a fourth child, Isaiah Woodring, who is not a party to this appeal. He remains in foster care at this time. Ms. Woodring is present. She has these four children. These children here, Carson Filkins, & Draven, & Drak, have different fathers, of course. One is Filkins. One is for Shuren. On August 8th of 2018, an investigator came to Ms. Woodring's home with a deputy from the Franklin County Sheriff's Department and asked for entrance and asked to come in and speak with her and ask her if she was abusing substances, and she cooperated and said she had a pill she didn't have permission to have and had been engaged in some illicit substances. She was cooperative. There's a dispute, I think, in the record about whether children were present at that time. We filed this appeal because on August 8th, this commenced. On October 20th, there was a shelter care a few days later. I was not involved in the case at that time. Ms. Woodring agreed that these children could go with their fathers rather than placed in foster care, and she agreed that the oldest child could go to his daycare provider who was a friend of hers and also the daycare provider of the other children in order to stabilize the situation at that time. There was a shelter care hearing held, and this case was set for adjudication on October 22nd. Now, in that intervening period, nothing happened for Ms. Woodring. She was not told to go direct test or come to DCFS offices to get an assessment going. She was not given a service plan. Nothing happened. Were there any visitation? I don't know if that's relevant. I'm just curious of the timing here. It's my understanding, no. She had no contact. So, on October 22nd, she and I were both late for this hearing that normally would not have been. I had filed an entry in one of the four cases. She still had a public defender on some of the cases. Normally, the five or ten minutes before we arrived there, she was coming to my office, I thought, and she went straight to the courthouse. She caught the tail end of that hearing, and they recognized her appearance there. Normally, on juvenile day, that would not have been a huge issue because there are 10 or 15 cases, and they go all afternoon, and they pass your case until the whole group is there. But that didn't happen that day, so I really, frankly, don't expect, although that's part of my issue of appeal here, I don't really expect much relief on that. When you're late, you're late, and sometimes things happen to your detriment. But the adjudication process is where the real evidence is heard. And in this case, the report, which is in the record of the investigator, says that the investigator received a text message to go to this home. Not a hotline, although at adjudication, she said she got a hotline report. Now, perhaps she got a text message about a hotline report, but it was certainly unclear. So the point I'm trying to make with this is that I filed this appeal because DCFS proceedings are not to be substituted for custody hearings. They're to protect children and remove children from the home. So if you're a disgruntled parent without custody or a disgruntled grandparent, these proceedings are not to be used in order to grab custody. I think this case for Katie Woodard clearly was that sort of a case. So on October 22nd, she appeared and I appeared there at the end of that hearing, and she was given her first service plan. It's in the record. It's signed October 22nd. Now, October is the August, September, October. At that point, it was about 75 to 80 days. She's supposed to have a service plan by their rules in 45 days. Now, DCFS is created by a statute. It's an agency that derives all its powers from statutes and from its own administrative code. It has its rules to operate under. The model is to get a service plan so that she can start working to correct the conditions that resulted in the children being removed from the home. And that didn't start. It did not. She was not given a service plan or any services. On October 22nd, she got the plan. She immediately began, and it's in the record, to do her drug testing, the things that they wanted her to do, get a substance abuse assessment, go to parenting class, show us her drug testing, and everything. The administrative code also has, addresses the issue of substance abuse for parents. It is not an uncommon issue in families. It may be from prescription drugs. It may be from illicit drugs. But it's not abnormal. And for Ms. Woodring, this was a very, I just have to say she was not a diehard drug addict or anything like that. She, it was really minimal early involvement for her and something she's entirely corrected on her, pretty much on her own. She, she was set in for dispositional hearing on November 19th, and I believe at my request it was continued. I'm not exactly sure. But we appeared back on December 3rd and had, there was a dispositional hearing. And at that time, the state moved at the request of DCFS to transfer the guardianship and custody of the children to what they called the non-offending fathers. And that was done. And three of the four cases were closed. So the issue I have to raise before the court is under the DCFS rules, a parent whose children are removed from their care has nine months to correct the conditions that resulted in the children being removed from their care and go through the program of whatever DCFS wants them to do to restore the home, restore the family to the home. In this case, there were these four children with three different fathers, and I put in my brief, and I think that's probably in the record somewhere in those pleadings. Katie would never sought child support. She'd never taken any of these fathers to court. But they all enjoyed visitation with their children at her, because she allowed that. And they never sought any particular orders. And, of course, someone that's not ordered to pay child support doesn't move forward, rarely steps up to say, I want a court order to visit and I want to pay child support. It doesn't usually happen. But at any rate, those children were, guardianship and custody were placed with the two non-offending, what they called the non-offending fathers without a determination of the court of what was in the best interest of the children. Now, the disposition, and I believe the notice of appeal is properly raised, although the appellate defender has, of course, argued that nothing that happened to the dispositional should be considered, it should be considered waived. But in the notice of appeal, I put that the court closed the juvenile case prematurely, which was, in effect, a summary judgment of custody to the father. Despite that, mother was not notified of a drug test. They didn't supply her with service plans required by law, failed to return calls to her, and improper evidence came through the dispositional hearing. And you're saying to the court that the trial court did not make a best interest finding? Yes. At the dispositional hearing? Yes. But also, the dispositional order says that custody and, I'll just read from the order to make sure I say it correctly. There's no transcript, right? None of the dispositional hearing. You had asked, the court had ordered me to prepare that, and I received another order that that was dismissed, and we did not prepare it and add it to the record. We only added the adjudication. But I still think because of the dispositional order is what it is on its face, that the court can look at what occurred at the disposition. On December 3rd, the dispositional order that's in this record, which is SECC 63, it found that the mother was still unfit, has ongoing substance abuse issues that affect her ability to parent. That was a finding that was made. And then that the father was fit and able and willing to care for. That reasonable efforts were made to keep the minor in the home, but they have not eliminated the necessity, so there were really no reasonable efforts to keep the children in the home. The service plan was appropriate. The services were appropriate. And then it says the petition is granted. The minor is adjudicated. She was already adjudicated, but the finding was made again. The minor is made award of the court. Custody of the minor is placed with the father. Guardianship remains with the father, but the father didn't have guardianship before. DCFS would have been granted guardianship. So the order is still consistent on its face. The order retains guardianship to the department, but yet gives guardianship in custody to the father. So if guardianship remained with DCFS at that point, they would have had a set of permanency carrying down the road, which never happened. I can tell you I did a state's attorney work early. My first five years of my career, I was signed juvenile docket. I understand how these orders are, how they quickly get created, but you can't have it both ways. You can't have guardianship to the state and guardianship to the father in this kind of circumstances with the case. Was there a guardian at Lydon designated? Pardon? There was. The guardian at Lydon was Adam Negreski. Was there a report of the guardian concerning the disposition and placement of the minors? No. In the transcript of the adjudication, the investigator asked for guardianship to be transferred at adjudication. And James Ford was also one of the attorneys. There were several attorneys because the children all had to have different attorneys. James Ford, the court inquired whether it was proper to go ahead and transfer these children this quickly. And Mr. Ford spoke up and said, I don't think you can do anything of that nature until dispositional hearing. And I'm not even sure about that, but certainly not at the adjudication stage. But the GAL for this particular child, which was Adam Negreski, and there would have been others, Mr. Ford would have been one, I believe, didn't file any written reports. Was there ever a home study of the non-offending parents? No. So what did the court have as a basis for disposition? I don't know. Was there a CASA involved? I have no, in the record, no CASA reports that were in the record, and I don't independently remember if CASA was there or not. I don't remember. But there's nothing in the record, as slim as it is, there's not anything in that record. I do believe that this case should be remanded because of this inconsistent dispositional order. You can't give guardianship and custody to a parent and then retain guardianship. It's just improperly done. But I think the bigger issue here is, and I think on that ground alone it should be remanded, but I think the bigger problem here is that DCFS' first goal and the stated goal of the agency in its own administrative code is to restore these families. These children, there were four of them, and now there are two in a home, one in a home, and one in a home. So the children have been separated, and they've been separated from their mother, and the mother was not afforded any. And as usually happens, these parents don't know what to do. They only know what the caseworkers tell them. And in this case, nothing, she got no services and no help and no phone calls, nothing until October 22nd when a service plan was given to her at the courthouse. And she started doing the things in the service plan that they asked of her. But from October 22nd to December 3rd, it's not enough time to get hardly anything done. Parenting, Project 12 Ways for Parenting is a 12 to 14-week program. You have a waiting list. She could certainly do her drug testing, get her substance abuse things done and get moving along that, and she did do that. But that's why the statute allows the nine months for the parents to, you know, I think in certain circumstances that to close a case and give these children to a non-offending parent is the appropriate thing to do. And I had to tell, I told my clients earlier today, I said that just last week, I was on the receiving end of such a ruling where a father that I was appointed for came in from Missouri and he was a non-offending parent. He'd been in five months and served with papers, and they hadn't asked him to do anything. The judge said, I'm trying to close this case, and father, take your child now to Missouri. And, you know, the department doesn't like that kind of, to be surprised with something like that. But in this case, this child was an infant placed with a foster home at Ronda Dock, and they were not going to give him anything to do. I'll respond to that. Your Honors, counsel, may it please the Court, Kelly Stacey appearing on behalf of the State. Respondent Mother raised numerous issues on appeal, and the State will limit its arguments to the issues of finding and neglect, the placement of the children with the fathers who were found fit, and the trial court's denial of Respondent's motion to vacate the adjudicatory order. The trial court here properly made a finding of neglect where the Respondent Mother admitted she used meth with the children present in the home. The Respondent Mother, apparently in response to a hotline call, the Respondent Mother escorted DCFS and a police officer named Harbison to her bedroom where meth and meth paraphernalia were stored in a laundry basket within reach of her children. And that resulted in the mother's arrest. She was placed in custody in the Franklin County Jail. Respondent Mother failed to address her unresolved substance abuse issues leading to an environment injurious to the minors. All of that is clear on the record. There's absolutely no indication she ever finished any services in this case. And moving now to the next issue of placement of the children, initially Respondent had been engaging in services. She was engaging in treatment and was doing well, but for some reason she suddenly stopped engaging and had minimal participation. She then began missing drug screens and failed to reengage in treatment. So her argument that she did not receive her client's service plan within 45 days, I think, is really a disingenuous argument. She was certainly aware of the contents of the client's service plan, or she would not have been able to follow through with any of those services. None of those providers would have been available to provide any services. But here it looks like she was provided with, here's what it is you need to complete. She started completing the drug treatment and then decided to stop. The Respondent's residence had an illegal electric hookup and no running water. She had no suitable home for the children to return to. Under the Juvenile Court Act, Section 2-23, when the court determines a minor is neglected, that occurred here, custody may not be restored to a parent until the judge finds that parent fit. Respondent mother was found unfit in this case. Under the circumstances, the court could not return the children to respondent mother until she was found fit, and by statute, the court could not return custody to her. The fathers, on the other hand, did not have substance abuse issues. There were no other issues requiring any intervention by DCFS. What about, and so talking about the dispositional hearing and the order, and I asked counsel about the best interest, and if you can remind us, what are the standards? And I think you've mentioned fitness is a hurdle for mother. If you can remind us, is there a requirement of a finding of best interest for the children, and did that, in fact, happen or not? Well, the issue on this case is there was a dispositional hearing. However, the transcript of that hearing is not a part of the record on appeal. The State previously filed a motion to compel production of the record on appeal. It is virtually impossible to determine if there was an error in the dispositional hearing that occurred in this case when the appellant has failed to produce a copy of the transcript of that hearing to determine what actually the court did do. So to come in here now without providing that copy of the transcript and to tell this court what the trial court below did was improper simply is not borne out by the record on appeal present in this court. So it is very difficult to tell what occurred at that dispositional hearing. I would like to know, and we did move for the production of those materials. However, with no response coming from the other side, we had to make a decision. These cases are on an expedited basis.  So if we waited to try to get those documents, how much longer would we cause a delay in this case? So we decided to try to go ahead and move with the record we had because it didn't appear we were getting any response from the other side. So if they're alleging there's an error in the case, it is their burden as the appellant to provide the transcript that shows exactly where that error is. And absent them showing clear error, I believe it is improper for this court to find error where they can't even point to one. On the issue of whether the trial court properly denied the respondent mother's motion to vacate or rehear the adjudication, the respondent mother has failed to show, even to this day, how she could have challenged the evidence presented by the State at the dispositional hearing. She didn't present any certificates of completion for substance abuse treatment or any other evidence of completion. Respondent mother, again, failed to file a transcript of the dispositional hearing, and she's failed to show any error in the proceedings below. Under the abuse of discretion standard, this court must determine whether the trial court acted arbitrarily, without the enjoyment of conscientious judgment, or in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. Here, this court should find no abuse of discretion. With regard to the request for the continuance, the case law says, because a delay in juvenile proceedings can cause harm to minors, there is no absolute right to a continuance, even when a parent is not present. And again, unless the appellant can show the denial resulted in prejudice, prejudice is not presumed. She is required to come into this court to show what she could have presented instead of we have a meritorious defense. Again, here today, there's not even a suggestion that she's even completed any of these services. So none of what she's raised previously or today should overcome that. The state believes it has addressed most of the issues in this case, but there is one remaining issue, and that is the motion to compel production of the record. The state believes it was able to put together a brief without some of those relevant portions of the record by being able to show these hearings were actually held and absent transcripts or other evidence to the contrary. The presumption is the trial court acted in conformity with the law. The presumption is the trial court is presumed to know the law and follow it properly. Absent any other indication, that is the presumption this court is left with, and the people, absent any other questions or any questions, would respectfully ask you to affirm. And the state would at this time also withdraw the motion to compel. Thank you, Your Honors. Thank you. I'd like to follow up on what I was about the other case, but the difference in the case that I was speaking of where the father was given the parent or the child at a permanency hearing who came in from Missouri. He'd been screened through the Kent system and didn't have any record. He did have a prison record ten years before, but that case had been open for two years. The mother had had an intact case for a whole year. The children had been left with her. She'd had services. They'd worked with her for a year to keep her family together. Then another child was born, which was the child I was involved with, and a court case was open, and after a year of that, at a permanency hearing, that child was transferred with the father. That's a lot different than this case, which was only open from August, I believe it's the third, August 8th or August 3rd. That would be the day of the petition until December 3rd, and then this case was closed. It is a disingenuous argument to say she didn't do anything. I can't. She's done a lot of things because Isaiah was— Has she completed anything? She has. What are the things she's completed? She brought me today her cinder stone. She has completed substance abuse assessment twice and done counseling twice. With Isaiah's case, which is ongoing, her oldest child, she was asked to get reassessed just a couple of months ago, which she did do. They found she didn't need any more treatment. She has completed parenting classes, all except for two classes, and the history on that is while the case went on with Isaiah, it was a full six or seven months, and the parenting class scheduler told her that it would be $300 per session each week to do parenting class. So I took this up with the judge as the last case went on, and the judge said if DCFS can't make that available to you at no cost, then I'm going to strike it from the service plan. And at that point, DCFS may go services available to her, but that was almost a six, seven-month delay to get her scheduled in those classes. So this is the kind of hurdle that you find over and over and over with the department, especially if they don't—if they find a reason not to help a certain parent because they just don't like the parent, they find the parent obstructive to them, or they prefer one parent over another. You know, I hate to—but it becomes a very—a personality. You'd hope it would just all be based on the rules and the law, but personalities play such a huge part in these cases. But counsel, you've talked about some things that your client may have done, but— They're not in this record. Is it in this record? No. Okay, well, see, it's not on this record, and whatever happens is happening in the trial court. Right. We're not addressing. We're just addressing, as you know, the issues you have built on. Right. And I just wanted to respond to that question of what she had done. But the point is she couldn't get all that done from August the 8th to December 3rd when they closed her case, and that we feel that it was error, first of all, and secondly, that there was no best interest finding or evidence, and it's nothing in the order to indicate the best interest was analyzed by the judge. And third, the order, the dispositional order is just inconsistent. It gives guardianship to the father and to the department. We were told that there was no record from the adjudication hearing. Is that correct? There's a record in here of the adjudication, but not of the dispositional. And why was there a record for that? My client didn't have much income, and we chose to prepare that adjudication record and show that she arrived at the tail end of that record. I didn't. I mean, if I'm ordered to, I will get that record to you and add it to this record. If the court, I didn't realize that that motion was still pending by the prosecutor, but we would add that to the record if the court would like to. And at this point, if that is important to the court, we would do that despite the deadline, whatever deadline. You know, we will not, you know, brace that. I would like to look at the record, though. SECC 54, it says CWS would be, that would be, I'm not sure what CWS, but it's a notation for one of the DCFS agency workers, case worker, specialist perhaps. But it says at the bottom of that page, they referred the mother to the direct screening with help at home in Carbondale on the following days, 10-29, 11-5, and 11-13. Mother completed on 10-29, but she went to take the test on 29, but could not produce urine. Completed the direct screen on 11-5, and then did not complete the one on 11-13. But the point of that is she was only asked to do the direct testing after the adjudication on 10-22 when she got the service plan. She never was asked to do any of that between August and October 22nd. Thank you. Thank you. The court will take the matter under advisement and issue a ruling in due course. The time to stand is adjourned until next month. Thank you. All right. Until tomorrow. Tomorrow.